IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES** | * |
| | * |
| v. | *   Crim. Case No.: SAG-10-0145 |
| | * |
| **MARK LOMAX,** | * |
| | * |
| Defendant. | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On June 15, 2011, a jury found Mark Lomax guilty of three counts of robbery. ECF 76. On November 9, 2011, United States District Judge William M. Nickerson sentenced Lomax to 240 months of incarceration on each count, to run concurrently. ECF 83. Lomax is currently incarcerated at USP Coleman I. On November 12, 2020, Lomax filed a *pro se* Motion for Compassionate Release. ECF 127. This Court appointed counsel to represent Lomax, and full briefing ensued. ECF 132, 134, 136. This Court also requested and received supplemental exhibits relating to Lomax's medical and disciplinary records. ECF 142. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Lomax's Motion will be denied.

**I.     LEGAL STANDARDS**

As part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), permitting courts to reduce an existing term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i) (2018); Pub. L. No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239-41 (2018). While previously, any motion for compassionate release had to be initiated by the Bureau of Prisons ("BOP"), the First Step Act granted defendants the ability to move the Court for a reduction in their sentence for "extraordinary and compelling reasons." § 603(b)(1). Before a defendant's motion can be filed with the Court,

one of two conditions must be satisfied: (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* Once a motion is for compassionate release is properly filed, the Court follows a three-step inquiry: (1) determining whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release; (2) considering whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction; and (3) ensuring that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

## II.   ANALYSIS

It appears that Lomax adequately exhausted his administrative remedies. *See* ECF 132-1. Even assuming that this gatekeeping requirement has been satisfied, Lomax's Motion fails to establish a medically-based "extraordinary and compelling reason[]" warranting further consideration of compassionate release.

Congress has charged the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). 28 U.S.C. § 994(t) (2018). In response, the Commission defined "extraordinary and compelling reasons" to exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" as determined by the BOP. *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1(A)–(D)

(U.S. SENTENCING COMM'N 2018) [hereinafter "U.S.S.G."].  This Court has authority to consider any "extraordinary and compelling reason" a defendant might raise, regardless of the BOP's definitions.  *See United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020).

Relevant to this case, the COVID-19 pandemic can, in certain circumstances, give rise to an "extraordinary and compelling reason[]" for an inmate's release under the First Step Act.  *E.g.*, *Wise*, 2020 WL 2614816, at *6-8; *Gutman*, 2020 WL 2467435, at *2.  In this Court's view, the case law demonstrates that continued exposure to COVID-19 in an incarcerative setting might convert a medical condition that might not otherwise be deemed "serious" into a "serious medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  *See* U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I).

However, the fact that COVID-19 is present in a correctional facility is not alone sufficient to qualify an inmate for compassionate release under the First Step Act.  *See United States v. Williams*, Crim. No. PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.) ("The existence of the present pandemic, without more, is not tantamount to a 'get out of jail free' card.").  Instead, to qualify for compassionate release, an inmate must demonstrate that he (1) has a condition that compellingly elevates his risk of becoming seriously ill, or dying, from COVID-19, and (2) is more likely to contract COVID-19 in his particular institution than if released.  *See, e.g.*, *Wise*, 2020 WL 2614816, at *6-7 (discussing the danger that COVID-19 poses, and collecting cases finding that "serious chronic medical conditions and old age qualify" as compelling reasons for compassionate release); *United States v. Austin*, Case No. 15-20609, 2020 WL 2507622, at *4-5 (E.D. Mich. May 15, 2020) (finding that even if the defendant's petition was timely, release would be improper, even though he both was immunocompromised and had heart disease, because

3

there were no COVID-19 cases at his prison), *appeal filed*, No. 20-1523 (6th Cir. June 8, 2020); *United States v. Harper*, Crim. No. 7:18-cr-00025, 2020 WL 2045381, at *3 & n.3 (W.D. Va. Apr. 28, 2020) (release justified by the defendant's age, heart condition, COPD, emphysema, and asthma, coupled with the fact that the prison he was housed at had "the fourth largest number of infections among federal prisons in the country"); *Mel*, 2020 WL 2041674, at *3; *United States v. Shah*, Case No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (denying release, in part, because there were no COVID-19 cases at the inmate's facility, and the prison was making efforts to protect inmates).

The analysis under the first prong of this two-part inquiry is heavily guided by the CDC's published risk factors for incurring a severe, life-threatening case of COVID-19. Lomax does appear to suffer from certain conditions listed as risk factors by the Centers for Disease Control & Prevention ("CDC"). *People Who Are at Increased Risk for Severe Illness: People with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (last visited April 13, 2021), https://tinyurl.com/y9chuzkm [hereinafter "CDC Underlying Condition Risk Factors"]. Just because Lomax might have one or more underlying condition that elevates his risk, however, does not mean that he is entitled to compassionate release. Instead, his underlying medical conditions must compellingly elevate his risk of becoming severely ill, or dying, from COVID-19. The medical conditions Lomax cites appear to be largely mild, well-controlled, or no longer actively indicated in his records.

Moreover, Lomax declined to avail himself of a COVID-19 vaccine, authorized for emergency use by the FDA, when vaccination was offered to him by the BOP. ECF 142-1. Courts now recognize that a refusal to take preventative measures to protect oneself from COVID-19 undermines any assertion that the risk of viral infection constitutes an extraordinary and

4

compelling reason justifying release. *See, e.g.*, *United States v. Martin*, Case No. 1:05CR21, 2021 WL 1168696 (N.D. W. Va. Mar. 26, 2021) (collecting cases); *United States v. Siegel*, Cr. No. TDC-03-0393, 2021 WL 962491 (D. Md. Mar. 15, 2021) (premising a decision to deny compassionate release, in part, on the fact that the defendant "has refused to accept vaccination, a more direct means of protecting herself from COVID-19 than full release from prison). Any decision to the contrary would create a perverse incentive in favor of declining the vaccine, undermining the BOP's efforts to protect its incarcerated population and to allow prison operations to return to some degree of normalcy in the coming months. In fact, information available on the BOP's website indicates that there is currently just one inmate case and two staff cases of COVID-19 at USP Coleman I, perhaps because a significant number of its inmates and staff have been inoculated. *See* https://www.bop.gov/coronavirus/ (last visited April 29, 2021).

Lomax argues, in the alternative, that this Court should consider the length of his sentence, which he contends is longer than that he would receive if sentenced today, to be an "extraordinary and compelling reason" justifying further consideration of compassionate release. This Court need not reach the question of whether an overall shift in sentencing law or practice—if one even exists here in the first place—is "extraordinary and compelling." Even assuming *arguendo* that Lomax had established an extraordinary and compelling reason justifying further consideration of his case, this Court would deny release or reduction of the sentence in light of the § 3553(a) sentencing factors it must consider. *See United States v. Wirsing*, 943 F.3d 175, 183 (4th Cir. 2019); *United States v. Logan*, Cr. No. CCB-10-0203, 2019 WL 3391618 *1 (D. Md. July 26, 2019). Those factors include (1) "the nature and circumstances of the offense;" (2) "the history and characteristics of the defendant;" (3) the need "to protect the public from further crimes of the defendant;" and (4) "the need to avoid unwarranted sentence disparities among defendants with

similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). The Court may also consider the defendant's conduct since his conviction. *See Logan*, 2019 WL 3391618 at *1.

Beginning with the nature and circumstances of his offense, Lomax was convicted of three robberies of a single victim store clerk within a nine-day span. During those robberies, he implied and stated that he had a firearm. The victim teller described her physical and psychological injuries to the Court and noted Lomax's lack of remorse for his actions. ECF 134-1 at 55-56. Robberies are gravely serious offenses in the eyes of the law. To repeatedly rob the same clerk, threatening her with violence each time, is particularly disturbing and egregious. The nature and circumstances of his offense, then, weigh against a sentence reduction.

Similarly, the second factor, Lomax's history and characteristics, and especially his behavior during his incarceration, weighs heavily against a reduction. Lomax's criminal history is egregious, including four robbery convictions before this one. ECF 134-1. In fact, Lomax had just been released from incarceration on a prior robbery conviction on July 2, 2009, when he committed the three robberies charged in this case weeks later in August. *Id.* That temporal proximity caused the state court to impose a consecutive fifteen-year state sentence for the violation of parole Lomax committed by engaging in the three robberies. In addition to the fact that Lomax's last period of release resulted in his immediate return to robberies, his disciplinary records during incarceration are deeply troubling and do little to suggest that Lomax will not return, yet again, to violent conduct should he be released. Lomax has received sanctions for multiple possessions of homemade weapons while incarcerated, most recently culminating in his use of such a weapon to stab his cellmate just last month. ECF 142-2, 142-3, 142-5. This Court, then,

6

sees no evidence of rehabilitation suggesting that Lomax is ready to refrain from criminal conduct moving forward.

Similarly, as to the third factor, the need to protect the public from further crimes of the defendant, Lomax's recent and serious disciplinary infraction undermines the notion that he would be law-abiding in the future, and suggests that there is a continued need to protect the public from his conduct.

The final § 3553(a) factor is the need to avoid unwarranted sentence disparities. Lomax focuses almost exclusively on this factor in his briefing, suggesting that his sentence would be far lower if imposed today, in large part because he would not qualify as a career offender. *See* ECF 132, 136. His argument is somewhat speculative, because his criminal history and the nature of the instant offenses could well have motivated a judge to determine that a statutory maximum sentence was warranted, even had the advisory guidelines suggested a lower range. Moreover, Lomax's challenge to the BOP's calculation of time credit, in light of the consecutive state sentence he received for violation of parole, is not appropriately presented to this Court. The BOP appears to have determined that Lomax served his consecutive state sentence before commencing his federal sentence, which is a determination within its discretion. The "unwarranted sentence disparities" factor is thus, at best, neutral because there are several characteristics of his offense and criminal history that may have counseled against a lighter sentence even without the career offender designation.

In sum, Lomax is not entitled to the relief sought because he has not established a medical condition that compellingly elevates his risk of severe illness. In addition, even if the "unwarranted sentencing disparities" factor were deemed neutral or even to weigh in Lomax's favor in light of

the evolution of sentencing law, the remaining § 3553(a) factors weigh strongly against reducing his sentence. Accordingly, his Motion, ECF 127, will be denied by separate order.


Dated:  April 30, 2021                             /s/
                                                Stephanie A. Gallagher
                                                United States District Judge